■ In the Matter of HERBERT P. SEGARRA, an Attorney, Respondent. COMMITTEE ON PROFESSIONAL STANDARDS, THIRD JUDICIAL DEPARTMENT, Petitioner. [603 NYS2d 594] —Per Curiam. Respondent was admitted to practice by this Court on January 14, 1982. He is employed as a deputy counsel for the Division of Parole in Albany.

By petition dated August 18, 1992, the Committee on Professional Standards accused respondent of five charges of professional misconduct. After a five-day hearing, the Referee sustained portions of the petition and dismissed other portions. Petitioner moves to confirm the report in part and to disaffirm in part.

Most of the charges stem from respondent's relationship with one William J. Foley. Foley and respondent met in the late 1950s when respondent was a bicycle messenger for Western Union in Brooklyn where Foley resided and owned several properties. Their relationship strengthened over the years and Foley encouraged respondent to attend law school. Respondent graduated from Albany Law School in 1980. In the fall of 1982 when Foley was about 87 years old, he came to live with respondent and his family in Albany. He stayed with them until he died in July 1988, at about the age of 93. Foley deteriorated physically and mentally during these last years of his life. He was hospitalized often. When he was not hospitalized, respondent's family provided him with nursing care and a congenial home life. Respondent also assisted Foley with his financial affairs and rental properties and held a power of attorney from Foley.

Foley's stay with respondent's family has engendered much litigation. Respondent unsuccessfully opposed a conservatorship petition and the resulting February 10, 1987 order of the Albany County Supreme Court appointing a conservator for Foley *(see, Matter of Foley,* 140 AD2d 892, 150 AD2d 884). Respondent filed a petition for probate of a will dated February 6, 1984, which basically left Foley's estate to respondent

and his family. Two of Foley's potential heirs filed objections. The resulting settlement is the subject of a pending appeal before this Court. Finally, respondent has filed an action against the conservator and Foley's niece in Federal court seeking damages against the defendants for, *inter alia,* initiating the instant disciplinary proceeding by complaining to petitioner.

The Referee sustained eight of the nine specifications of charge I indicating respondent did not cooperate with the conservator in a manner befitting an attorney. A fair reading of the conservatorship order contemplated control of Foley's financial affairs by the conservator, or Foley himself. To the extent that respondent continued to conduct Foley's financial affairs, even under a power of attorney, such affairs become bifurcated to the detriment of the conservatorship. Respondent should have affirmatively cooperated with the conservatorship even though opposed to it. The sustained specifications indicate respondent did not timely comply with a request for bank records from the conservator, continued to make deposits and issue checks from Foley's checking account, continued to accept rental payments from Foley's tenants in Brooklyn, continued to accept mortgage payments due Foley, and reimbursed himself for certain legitimate expenses he had incurred on Foley's behalf. The Referee dismissed specification 3 alleging respondent's failure to comply with an order to deliver documents; respondent had obtained a stay of the order. We confirm the Referee's report with respect to charge I.

The Referee did not sustain charge II which accused respondent of involving himself in conflicts of interest in real estate transactions involving Foley. The Referee found lacking the requisite attorney-client relationship between Foley and respondent. Specifications 1 and 2 concern the purchase of 1346 New Scotland Road in Albany in 1983 from the Carney estate by respondent and his wife. Within a day, they had sold it to the Nieveses (respondent's brother-in-law and sister). The Nieveses partially financed their purchase with a $10,000 loan from Foley, brokered by respondent's nephew. Foley took back a $10,700 mortgage against 1346 New Scotland Road and the Nieveses made dutiful payments to Foley. Specification 3 concerns respondent's purchase of a property in 1983 using an $18,000 advance from Foley. Respondent testified that Foley had been holding this money for respondent and that the money was derived from a real estate transaction in the 1970s

involving Foley, respondent, and respondent's brother. We confirm the Referee's report with respect to charge II.

The Referee sustained specifications 1 through 4 of charge III which accuses respondent of attempting to mislead and deceive petitioner and other parties. According to specifications 1 through 3, respondent, in letters to petitioner falsely stated he made it a point of requiring that Foley personally visit Albany Savings Bank for any transactions; explained his endorsement of Foley's $10,000 check to the Nieveses in a manner misleadingly indicating that the check was uncertified and that respondent was acting as a guarantor; and misleadingly indicated he did not have bank statements or ledgers for Foley. According to specification 4, respondent testified at a deposition that Foley had provided only $20,000 towards the purchase of 485 New Scotland Road by respondent, his wife, and Foley, when the actual figure was $50,000. It appears Foley and the Segarras purchased the property for $70,000 in 1984 as joint tenants with the right of survivorship. The Segarras moved into 485 New Scotland with Foley after the purchase. The Segarras still reside there. The Referee did not sustain specifications 5 and 6. The former concerns the timing of the return to the Nieveses by respondent of certain mortgage checks made payable to Foley by the Nieveses. The latter concerns a form affidavit by respondent in 1987 in which he acknowledges to a bank that Foley was of sound mind, that Foley had not at any time revoked or repudiated an attached power of attorney and that said power of attorney was still in full force and effect. We confirm the Referee's report with respect to charge III.

Charge IV generally accuses respondent of engaging in the private practice of law in violation of the rules of the Chief Judge (see, 22 NYCRR 25.40) while he was employed as an attorney for Mental Health Legal Services (MHLS), an auxiliary agency of this Court. The rule prohibits full-time court attorneys from maintaining an office for the private practice of law, holding oneself out to be in the private practice of law, or engaging in the private practice of law, except under limited circumstances. The Referee declined to sustain the charge. We disaffirm the Referee's report with respect to charge IV. Respondent's extensive use of letterhead, bearing his name and title, "Herbert P. Segarra, Attorney and Counsellor-at-Law", and bearing his home address, in correspondence to potential legal adversaries of Foley and others gave the impression that respondent was "holding himself out to be

in the private practice of law". The impression was bolstered by various services he performed for employees at MHLS, for Foley, and for various family members.

The Referee sustained both specifications of charge V which accused respondent of failing to cooperate with petitioner. The specifications allege delay and incomplete compliance in production of financial records relating to Foley. Respondent claims he supplied what he found in Foley's files when he found it. In sustaining the charge, the Referee found respondent's explanation unworthy of belief and concluded that respondent attempted to impede petitioner's investigation. We confirm the Referee's report with respect to charge V.

Respondent's actions to thwart the conservator and petitioner's investigation demonstrate a lack of proper regard for the authority of the courts and petitioner. Respondent, however, appears to have genuinely perceived the conservatorship as inimical to Foley's interests. Also, the record reveals a very convoluted relationship between respondent and Foley and a respondent whose replies, even when intended to be forthright, honest and revealing, were often obfuscatory. Finally, we note that respondent has an otherwise unblemished disciplinary record and appears to have provided satisfactory service as an employee of MHLS over a period of ten years.

Considering all of the circumstances of this matter, we conclude that respondent should be censured for his misconduct.

Mikoll, J. P., Yesawich Jr., Mercure, Crew III and Mahoney, JJ., concur. Ordered that the Referee's report is hereby confirmed with respect to charges I, II, III and V and disaffirmed with respect to charge IV; that respondent is hereby found guilty of the allegations of professional misconduct set forth in charges I (except specification 3), III (except specifications 5 and 6), IV and V; that petitioner's motion to confirm the Referee's report in part and to disaffirm it in part is granted in part and denied in part in accordance herewith; and it is further

Ordered that respondent is censured.